**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LARRY E. KENNEDY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 09-3924 (AET) |
| | : | |
| v. | : | |
| | : | |
| JAMES DRUMM, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> LARRY E. KENNEDY, Plaintiff <u>pro se</u>
> # 575502
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625

**THOMPSON**, District Judge

This matter was administratively terminated by this Court, by Order entered on September 8, 2009, because it appeared that plaintiff's application for <u>in forma pauperis</u> ("IFP") status was incomplete and no filing fee had been paid. (Docket entry no. 3). On October 21, 2009, Plaintiff submitted a complete IFP application with his six-month prison account statement (Docket entry no. 6), and asked that his case be re-opened, pursuant to the directive in this Court's September 8, 2009 Order. Based on Plaintiff's affidavit of indigence, the Court will grant the application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C.

§ 1915(a) (1998) and order the Clerk of the Court to re-open this matter and file the Complaint accordingly.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  On October 6, 2009, January 7, 2010, and August 13, 2010 (Docket entry nos. 5, 7 and 8, respectively), Plaintiff submitted further letters to the Court regarding additional allegations and new claims.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part at this time.

I.   BACKGROUND

Plaintiff, Larry E. Kennedy ("Kennedy"), brings this civil action, pursuant to 42 U.S.C. § 1983, against James Drumm and Michelle R. Ricci.  (Complaint, Caption).  The following factual allegations are taken from the Complaint and letter amendments (Docket entry nos. 1, 5, 7 and 8), and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Kennedy's allegations are mostly incoherent.  In his initial Complaint, Kennedy alleges that he was assaulted by a correctional officer at the Mercer County Correctional Jail in or around July or August 2006.  In or around December 2007, while

2

Kennedy was confined at South Woods State Prison, he alleges that he was not given his "injections." Next, in April 2008, while confined at New Jersey State Prison in administrative segregation, Kennedy appears to allege that Correctional Officer ("C.O.") Caicuco limited his food portions. He also alleges that from April to October 2008, Nurse Clark refused plaintiff medical attention six times after she gave him the "wrong medication" in April 2008 and his "arm got broke by doing exercise." (Complaint, at ¶ 6).

On or about October 5, 2009, Kennedy wrote to the Court with additional and supplemental allegations. (Docket entry no. 5). These allegations also were poorly articulated and rather unintelligible. At best, this Court discerns that Kennedy is alleging that he is being harassed and that the federal government has him under surveillance. He alleges that his food and juices were tampered with while he was confined at South Woods State Prison and that he was not given his medicine shot. He further states that on March 10, 2007, the doctor and nurses at South Woods State Prison "did [a] poor job helping [plaintiff] with [his] illness or medical problem." Kennedy states that he was placed in general population and assaulted by an unknown correctional officer on or about May 20, 2007. He claims that his "face was in bad shape," so he was transferred to New Jersey State Prison. On April 6, 2008, while at New Jersey State

3

Prison, he got into a conflict with another unnamed correctional officer, and plaintiff was sent to "lock-up" on April 9, 2008. He claims that on the two-mile walk across the prison to "lock-up", he was "violated" by a sergeant and five other officers. Kennedy also claims that on June 30, 2008, he got into another conflict with an officer where he had to defend himself.  After that incident, Kennedy alleges that he was not given enough food on his tray.  He again alleges that Nurse Clark gave him the wrong injection on October 10, 2008.  Kennedy claims that the doctor would not let him "see x-ray or hospital for treatment." (See letter dated September 9, 2009 at Docket entry no. 5, pp. 1-3).[1]

---

[1]  The Court notes that Kennedy had four separate letters attached to Docket entry no. 5.  In the second letter at pp. 4 and 5 of Docket entry no. 5, Kennedy refers to an incident that occurred in 1993.  Because this incident has no relation or connection to the allegations in plaintiff's Complaint, and otherwise is plainly time-barred if Kennedy intends to add these allegations as a claim herein, any claim will be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a cognizable claim for relief.  The next letter, dated September 10, 2009, at pp. 6-8 of Docket entry no. 5, appears to be an inarticulate and improper motion to vacate or set aside a sentence pursuant to 28 U.S.C. § 2255.  Kennedy fails to identify the federal conviction and sentence and, in fact, appears to be challenging more than one unidentified judgment. Accordingly, the letter will be dismissed without prejudice to plaintiff bringing a new and separate § 2255 motion, assuming that such motion meets with the requirements under § 2255, pertaining to "in custody" requirements, and is not time-barred or a second or successive motion.  Finally, the fourth letter dated September 16, 2009, at pp. 9-10 of Docket entry no. 5, appears to be an application form under 28 U.S.C. § 2254, seeking habeas relief from state custody.  Kennedy merely recites the form application and provides no information with respect to any

4

On January 4, 2010, Kennedy again wrote to the Court seeking release from detention. (Docket entry no. 7). There were two letters or applications attached to Docket entry no. 7, which are completely incomprehensible and unrelated to the allegations of plaintiff's § 1983 complaint. Accordingly, these applications for relief from detention and damages will be denied for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

On August 13, 2010, this Court received a copy of a letter that plaintiff apparently wrote to the Seton Hall University School of Law and Center for Social Justice with respect to this matter. The letter is completely incomprehensible. (Docket entry no. 8).

In his initial Complaint, Kennedy fails to state any claim for relief other than to file his Complaint. It is not clear whether he seeks money damages or injunctive relief. (Compl., ¶ 7).

---

state court judgment purportedly being challenged. Accordingly, the purported § 2254 application must be dismissed without prejudice at this time.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

6

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).[2]  Citing its recent opinion in <u>Bell</u>
<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,'"<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting
<u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." <u>Fed.</u>
> <u>Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].

---

[3]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]   In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

IV.  ANALYSIS

A.  Denial of Medical Care

It appears from the allegations in the Complaint that
Kennedy is asserting that he was denied adequate medical care
while he was confined at both South Woods State Prison and the
New Jersey State Prison.  The Eighth Amendment proscription
against cruel and unusual punishment requires that prison
officials provide inmates with adequate medical care.  Estelle v.
Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d
192 (3d Cir. 1999).  In order to set forth a cognizable claim for
a violation of his right to adequate medical care, an inmate must
allege:  (1) a serious medical need; and (2) behavior on the part
of prison officials that constitutes deliberate indifference to
that need.  Estelle, 429 U.S. at 106; Natale v. Camden County
Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

11

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.

12

825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See

13

also <u>Monmouth County Correctional Institutional Inmates</u>, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment"); <u>Durmer v.</u>
<u>O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897
F.2d 103 (3d Cir. 1990).

This Court finds, based on the allegations of the Complaint,
that Kennedy has failed to show the first required element of a
serious medical need with respect to his claims that he was not
given his "injections" in December 2007, and received poor
medical attention for his illness on March 10, 2007, while at
South Woods State Prison.  As stated above, a serious medical
need is demonstrated by alleging a diagnosed condition that
requires treatment, a condition "so obvious that a lay person
would recognize the necessity for a doctor's attention," or where
a denial of treatment would result in the unnecessary and wanton
infliction of pain" or "a life-long handicap or permanent loss."
<u>Atkinson</u>, 316 F.3d at 272-73.  Here, Kennedy does not allege any
diagnosis, disease or illness.  Nor does Kennedy identify what
the "injections" are and how the absence of the injections caused
him unnecessary pain or permanent loss.  Accordingly, any claim
against the nurses or doctors at South Woods State Prison must be
dismissed for failure to state a cognizable denial of medical
care claim under the Eighth Amendment.

Next, Kennedy alleges that Nurse Clark gave him the wrong injection that caused his arm to break during exercise.  At best, this is a claim of medical negligence, which is not actionable under § 1983.  Kennedy does not allege deliberate indifference by the nurse; rather, he claims she made a mistake and gave him the wrong injection.  As mentioned above, even if a medical judgment or action concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110. Accordingly, this denial of medical care claim against Nurse Clark must be dismissed with prejudice for failure to state a claim.

Finally, Kennedy alleges that Nurse Clark and the doctor at New Jersey State Prison denied him any medical care or treatment for six months from April to October 2008, such as an x-ray or hospital care, after plaintiff allegedly broke his arm doing exercise.  A fractured arm would appear to be a serious medical need requiring medical treatment.  Moreover, Kennedy's allegation that the nurse and doctor refused to provide any kind of medical care or attention for a fractured arm may be sufficient at this early stage to support a claim of deliberate indifference where there is no suggestion that there was any medical justification for denying medical treatment.  Therefore, the Court is constrained to allow this claim against Nurse Clark and the

15

unnamed doctor at the New Jersey State Prison to proceed at this time.[4]

B.  Excessive Force Claims

Next, Kennedy alleges that he was assaulted by a correctional guard while he was confined at the Mercer County Correctional Facility in 2006.  He also alleges that he was assaulted by a correctional officer at South Woods State Prison in May 2007, which caused injury to his face.  Finally, he alleges that he got in a conflict with an unnamed correctional officer at New Jersey State Prison on April 6, 2008, and that on April 9, 2008, he was "violated" by six correctional officers on his way to "lock-up."  Kennedy does not allege any injury with respect to the April 2008 incidents.

Kennedy's allegations suggest that he is asserting claims that the unnamed defendant correctional officers used excessive force against him in violation of the Eighth Amendment because he is a convicted prisoner.  See Graham v. Connor, 490 U.S. 386, 392-394 (1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment).  "The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and

---

[4]  Because Kennedy did not name these defendants in the caption of his Complaint or in paragraph 4 of the Complaint, which asks the plaintiff to name the defendants, the Court will direct the Clerk to add the names of Nurse Clark and Dr. John Doe to the docket in this matter.

unusual.'" <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  <u>Id.</u> at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  <u>Id.</u> at 346 (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  <u>See</u> <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes</u>, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Id.</u> at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

<u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting <u>Whitley v. Albers</u>, 475 U.S. at 321).  Thus, not all use of force is "excessive" and will give rise to the level of a

constitutional violation.  <u>See</u> <u>Hudson</u>, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action").  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  <u>Id</u>. at 9-10.

Here, the allegations of the Complaint fail to suggest a claim that the correctional officers at New Jersey State Prison assaulted Kennedy or that they acted in a malicious and excessive manner.  Kennedy does not allege that he did not provoke an assault.  He simply states that he got into a conflict with the unnamed officers, that they "violated" him, but he does not allege any injury or harm.  Indeed, he does not allege even a <u>de minimis</u> injury.[5]  Therefore, any claim of excessive force as against the unnamed correctional officers at New Jersey State Prison will be dismissed because Kennedy fails to state a cognizable claim under the Eighth Amendment at this time.

Kennedy does allege more than <u>de</u> <u>minimis</u> injury with respect to the assaults at the Mercer County Correctional Facility in

_____

[5]  "[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries."  <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm.  <u>Id</u>. at 649; <u>Brooks</u>, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were <u>de</u> <u>minimis</u>.  <u>Id</u>.

2006, and at the South Woods State Prison on May 20, 2007. However, these claims are now time-barred and must be dismissed.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007)(if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); see also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir.2007)("district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915(A)(b)(1) where it is apparent from the complaint that the applicable limitations period has run")(citing Jones v. Bock, Pino v. Ryan)(not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th

20

Cir. June 12, 2001) (unpub.) (applying <u>Pino</u> to current §
1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir. 1998)(unpub.);
<u>Johnstone v. United States</u>, 980 F. Supp. 148 (E.D. Pa. 1997)
(applying <u>Pino</u> to current § 1915(e)).

Federal courts look to state law to determine the
limitations period for § 1983 actions.  <u>See</u> <u>Wallace v. Kato</u>, 549
U.S. 384, 387-88 (2007).  Civil rights or constitutional tort
claims, such as that presented here, are best characterized as
personal injury actions and are governed by the applicable
state's statute of limitations for personal injury actions.  <u>See</u>
<u>Wallace</u>, <u>supra</u>; <u>Jones v. R.R. Donnelley & Sons</u>, 541 U.S. 369, 382
(2004)(federal civil rights claims under §§ 1981, 1982, 1983 and
1985 are subject to the state statute of limitations for personal
injury actions); <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985).
Accordingly, New Jersey's two-year limitations period on personal
injury actions, N.J. Stat. Ann. § 2A:14-2, governs plaintiffs'
claims under §§ 1983 and 1985.  <u>See</u> <u>Montgomery v. DeSimone</u>, 159
F.3d 120, 126 & n.4 (3d Cir. 1998); <u>Cito v. Bridgewater Township
Police Dept.</u>, 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat.
Ann. § 2A:14-2, an action for an injury to the person caused by a
wrongful act, neglect, or default must be commenced within two
years of accrual of the cause of action.  <u>Cito</u>, 892 F.2d at 25;
<u>accord</u> <u>Brown v. Foley</u>, 810 F.2d 55, 56 (3d Cir. 1987).  Unless
their full application would defeat the goals of the federal
statute at issue, courts should not unravel states' interrelated

21

limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

Moreover, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."  Wallace v. Kato, 549 U.S. at 388 (emphasis in original).  A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action."  Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982).  See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996)(citing Oshiver, 38 F.3d at 1386).

Here, the excessive force claims at issue admittedly arose in 2006, and on May 20, 2007.  Kennedy admits that he was assaulted at those times and sustained injury.  Thus, it is plain from the face of the Complaint that Kennedy knew, or had reason to know, in 2006 and on May 20, 2007, that he may have a claim against the unnamed defendants for use of excessive force or a common law claim of assault.  However, Kennedy did not file this

federal action until July 30, 2009,[6] well after the statute of
limitations had expired with respect to both claims.

Moreover, upon careful review of the Complaint, there is
nothing alleged to support an argument that Kennedy would be
entitled to equitable tolling of the statute of limitations.  Any
claim that Kennedy now alleges concerning assault and use of
excessive force accrued as admitted in 2006 and on May 20, 2007.
Kennedy alleges no facts or extraordinary circumstances that
would permit statutory or equitable tolling under either New
Jersey or federal law.[7]  Kennedy does not plead ignorance of the

---

[6] Pursuant to the "prison mailbox rule," a prisoner
pleading is deemed filed on the date the prisoner delivers it to
prison officials for mailing, not on the date the application is
ultimately filed with the court.  See Houston v. Lack, 487 U.S.
266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-
13 (3d Cir. 1988) (applying prison mailbox rule set forth in
Houston, which dealt with filing of an appeal, to a pro se
prisoner's filing of a habeas petition).  Although the Court is
unable to determine the exact date that Kennedy handed his
Complaint to prison officials for mailing, Kennedy signed his
Complaint on July 30, 2009.  See Henderson v. Frank, 155 F.3d
159, 163-64 (3d Cir. 1988)(using date prisoner signed petition as
date he handed it to prison officials for purposes of calculating
timeliness of habeas petition).  Accordingly, the Court finds
that July 30, 2009 was the date this Complaint was filed for
purposes of calculating the timeliness of the action, and not the
date the Complaint was received by the Clerk of the Court on
August 5, 2009.

[7] New Jersey statutes set forth certain bases for
"statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing
tolling because of minority or insanity); N.J.S.A. § 2A 14-22
(detailing tolling because of nonresidency of persons liable).
New Jersey law permits "equitable tolling" where "the complainant
has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.

law or the fact of his confinement (neither excuse being
sufficient to relax the statute of limitations bar in this
instance) as the basis for delay in bringing this suit now.
Kennedy has not offered any explanation for his lack of diligence
in pursuing these excessive force claims long after they had
expired.  This omission strongly militates against equitable
tolling of the statute of limitations here.   Therefore, the Court
finds that the excessive claims against correctional officers at
the Mercer County Correctional Facility and South Woods State
Prison are now time-barred and must be dismissed with prejudice.

C.   Inadequate Food Claim

     Kennedy also asserts that on several occasions while
confined at South Woods State Prison and New Jersey State Prison,
correctional officers limited his food portions and tampered with

---

See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),
certif. denied, 172 N.J. 178 (2002).  "However, absent a showing
of intentional inducement or trickery by a defendant, the
doctrine of equitable tolling should be applied sparingly and
only in the rare situation where it is demanded by sound legal
principles as well as the interests of justice."  Id.
     When state tolling rules contradict federal law or policy,
in certain limited circumstances, federal courts can turn to
federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370
(3d Cir. 2000).  Under federal law, equitable tolling is
appropriate in three general scenarios:
          (1) where a defendant actively misleads a plaintiff
          with respect to her cause of action; (2) where the
          plaintiff has been prevented from asserting her claim
          as a result of other extraordinary circumstances; or
          (3) where the plaintiff asserts her claims in a timely
          manner but has done so in the wrong forum.

Id. n.9.

his food and juices.  These allegations suggest that Kennedy may be asserting an Eighth Amendment violation against unnamed defendants based on unconstitutional conditions of confinement, namely, inadequate food/nutrition.

"The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded on other grounds by 42 U.S.C. § 1997e(a).  A prisoner does not lose this protection despite a prison sentence, for "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In order to establish a claim under the Eighth Amendment based on conditions of confinement, the Supreme Court has set forth a two-part test with objective ("Was the deprivation sufficiently serious?") and subjective ("Did the officials act with a sufficiently culpable state of mind?") components. Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The subjective element demands that the prisoner demonstrate "that prison officials acted or failed to act with deliberate indifference." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

With regards to the objective prong, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 347. "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. Conditions of confinement for convicted criminals are unconstitutional only when they "deprive inmates of the minimal civilized measure of life's necessities." Id. Indeed, under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993).

Here, Kennedy's major complaint concerning the conditions of his confinement involves his allegation that the food was inadequate. Namely, he was not given enough food on several occasions, and that he believed that there was tampering with his food and juice on several occasions.

The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980); see also Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983). Thus, "[a] substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002).

26

Nevertheless, while "a prisoner's diet must provide adequate nutrition," prison officials "cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009)(citation omitted). Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999)(quoting Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998)). As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'gruel' [providing 1000 calories a day] might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978).

Here, the allegations in this Complaint do not satisfy the objective component. Kennedy does not allege that the diet he was provided while confined at either South Woods State Prison or the New Jersey State Prison was nutritionally inadequate. Rather, he simply complains that he did not receive 'enough food' on several occasions. Moreover, Kennedy makes no allegations that he suffered from malnutrition, weakness, fatigue, or illness from the allegedly inadequate food and juice.

Consequently, the allegations in the Complaint are too conclusory to show a deprivation of adequate nutrition or that the allegedly inadequate diet had a sufficiently serious effect on Kennedy's health to satisfy the objective component of the conditions of confinement claim under the <u>Iqbal</u> pleading standard. "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation .... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).[8]

Therefore, this Court finds that Kennedy fails to state a cognizable claim that the conditions of his confinement with respect to his food portions were unconstitutional under the Eighth Amendment and this claim should be dismissed accordingly for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

D.   <u>Claims Against Defendants Drumm and Ricci</u>

Finally, because the Complaint fails to allege any facts against the named defendants, James Drumm and Michelle R. Ricci, the Complaint will be dismissed at this time, in its entirety as

---

[8]   Similarly, Kennedy's bald claim that his food and juice were tampered with is not sufficient to satisfy the <u>Iqbal</u> standard for pleading. The allegation is nothing more than a "naked" assertion devoid of the requisite factual enhancement necessary to state an actual claim of a constitutional violation under § 1983. <u>Iqbal</u>, 129 S.Ct. at 1949.

against these defendants, for failure to state a cognizable claim
for relief under § 1983, pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(1).  Kennedy names these
defendants only in the caption of his Complaint.  The Complaint
is completely devoid of any factual allegations to support a
claim of a constitutional violation under § 1983.

    Moreover, defendant Ricci appears to be named in a
supervisory capacity.  Generally, local government units and
supervisors are not liable under § 1983 solely on a theory of
respondeat superior.  See City of Oklahoma City v. Tuttle, 471
U.S. 808, 824 n.8 (1985); Monell v. New York City Department of
Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal
liability attaches only "when execution of a government's policy
or custom, whether made by its lawmakers or by those whose edicts
or acts may fairly be said to represent official policy, inflicts
the injury" complained of); Natale v. Camden County Correctional
Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a
civil rights action must have personal involvement in the alleged
wrongs, liability cannot be predicated solely on the operation of
respondeat superior.  Personal involvement can be shown through
allegations of personal direction or of actual knowledge and
acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
Cir. 1988) (citations omitted).  Accord Robinson v. City of
Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v.
Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

As stated above, there simply are no allegations in the Complaint that show these defendants, in particular defendant Ricci, had any personal involvement or knowledge of the alleged constitutional violations asserted by Kennedy. Plaintiff does not provide any factual support for his bald claims. Accordingly, any claim he may be asserting in this regard is subject to dismissal under Iqbal, 129 S.Ct. at 1948-1950 (civil complaints must allege "sufficient factual matter" to show that a claim is facially plausible). Accordingly, the Complaint is subject to dismissal as to both named defendants, Drumm and Ricci, for failure to state a claim at this time.

IV.   CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed in its entirety as against the named defendants, James Drumm and Michelle E. Ricci, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Additionally, plaintiff's Eighth Amendment claims alleging excessive force and inadequate food, as against unnamed defendants, will be dismissed for failure to state a cognizable claim for relief under § 1983. Plaintiff's claim asserted against the nurses or doctors at South Woods State Prison for failure to give him "injections" will be dismissed for failure to state a cognizable denial of medical care claim under the Eighth Amendment. Likewise, his claim against Nurse Clark for giving him the wrong injection sometime

30

in 2008 will be dismissed with prejudice for failure to state a cognizable denial of medical care claim under the Eighth Amendment.  Next, plaintiff's denial of medical care claim against Nurse Clark and the doctor at New Jersey State Prison who allegedly denied him medical treatment for his broken arm from April 2008 through October 2008, will be allowed to proceed at this time.  The Clerk of the Court will be directed to amend the docket caption to add Nurse Clark and Dr. John Doe as defendants in this matter.  Finally, plaintiff's applications for relief under 28 U.S.C. §§ 2254 and 2255 (see Docket entry no. 5) shall be dismissed without prejudice because they are incomplete, improperly submitted, and fail to comply with Rule 2 of the Rules Governing Section 2254 cases in the United States District Courts and Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  An appropriate order follows.

_Anne E. Thompson_

_____
ANNE E. THOMPSON
United States District Judge

Dated: 9/22/10

31